**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

| | |
|---|---|
| AURORA F. YOUNG, | |
| Plaintiff, | Civil No. 21-1408 (JRT/KMM) |
| v. | |
| ARTHUR J. GALLAGHER & CO., | **MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION** |
| Defendant. | |

Elizabeth S. Wright and Lori A. Johnson, **PARKER DANIELS KIBORT LLC**, 123 North Third Street, Suite 888, Minneapolis, MN 55401, for plaintiff.

Charles F. Knapp and Raphael Coburn, **FAEGRE DRINKER BIDDLE & REALTH LLP**, 2200 Wells Fargo Center, 90 South Seventh Street, Minneapolis, MN 55402, for defendant.

Plaintiff Aurora F. Young initiated an action for a declaratory judgment that her Employment Agreement ("Agreement") with Defendant Arthur J. Gallagher & Co. ("Gallagher"), her former employer, does not prohibit Young from soliciting customers she previously serviced while employed by Gallagher. Gallagher now brings this Motion to Dismiss for Lack of Subject Matter Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) alleging that Young has not met her burden of establishing that the amount-in-controversy exceeds $75,000 as required for diversity jurisdiction under 28 U.S.C. § 1332(a). Therefore, according to Gallagher, the Court does not have subject matter jurisdiction over Young's claim and it must be dismissed.

Young has sufficiently established that a fact finder could conclude that the amount in controversy exceeds $75,000 and Gallagher has not established that it is a legal certainty that Young's claim is for less than the jurisdictional amount. The Court will, therefore, deny Gallagher's motion.

## BACKGROUND

### I. FACTUAL BACKGROUND

Young has been a compensation consultant to physicians, physician practice groups, hospitals, and healthcare systems for approximately twenty years. (Compl. ¶¶ 1, 13, June 15, 2021, Docket No. 1.) Gallagher provides insurance, risk management services, and compensation consulting services to various industries. (Compl. ¶ 9; Decl. of Aurora F. Young ("Young Decl.") ¶ 7, Aug. 11, 2021, Docket No. 17.)

Young joined Integrated Healthcare Strategies, LLC ("IHS") in 1999 and worked with the company until 2015, when Gallagher acquired IHS. (Young Decl. ¶¶ 6–7; Compl. ¶ 2.) In order to continue her employment, Gallagher required Young to sign an Employment Agreement containing restrictive covenants.[1] (Compl. ¶ 2.)

In March 2021, Young resigned from her employment with Gallagher, and her employment formally ended on April 6, 2021. (*Id*. ¶ 16.) Prior to her departure, and at the behest of Gallagher management, Young used her Gallagher email account to notify

---

[1] The parties disagree about the existence of a non-solicitation provision in the Agreement. However, for purposes of this Motion to Dismiss, the Court is not required to and does not reach a conclusion on whether such provision exists or was violated.

the clients she worked with that she was leaving and that a different employee would replace her. (*Id.*) On April 12, 2021, Young joined ECG Management Consultants ("ECG"), a national consulting firm offering various consulting services to healthcare providers, as a Principal in ECG's Provider Financial Services Division. (Young Decl. ¶ 3; Compl. ¶ 17.)

After Young moved to ECG, six of the clients she worked with at Gallagher contacted her about the possibility of transitioning their business to ECG from Gallagher.[2] (Young Decl. ¶ 12.) Young informed Gallagher of the communications and attempted to negotiate an agreement allowing those clients to move to ECG and work with consultants other than Young. (*Id.* ¶ 13.) In response, Gallagher informed Young that her further communication with these clients would be considered solicitation and a violation of the Agreement. (*Id.* ¶¶ 13, 17.) Nine additional Gallagher clients have since contacted Young about moving their business to ECG. (*Id.* ¶ 14.) Two of the fifteen clients have already begun or will soon begin transitioning. (*Id.* ¶ 15.)

Young estimates that the average annual revenue she generated for Gallagher for the initial six clients that contacted her is approximately $450,000. (*Id.* ¶ 12.) She estimates the annual revenue increases to $682,500 after adding the annual revenue from the nine additional clients who have since contacted her. (*Id.* ¶ 23.)

---

[2] Young's former clients were able to contact her because Gallagher had required consultants, including Young, to use their personal cell phones (and briefly, their personal email accounts) for company business. (Young Decl. ¶¶ 9, 12.)

According to Gallagher's calculations, the revenue generated by the 15 total clients was $273,641.25 in 2019 and $241,202.45 in 2020, and the total revenue generated by the clients (not including the two who have already begun the process of moving to ECG) for the entire Physicians and Advanced Practice Providers group totaled $406,285.89 in 2020.  (Decl. of Scott Hamilton ("Hamilton Decl.") ¶¶ 7–8, Aug. 19, 2021, Docket No. 23.)

Young's compensation package from ECG includes a base salary and incentive compensation based on the revenue she generates for the company.  (Young Decl. ¶ 20.) Young's compensation is based on a formula in which she will receive $87.50 of each $1,000 in revenue resulting from referrals she makes.  (*Id.* ¶ 23.)  She may also be eligible for compensation in the form of equity depending on how much revenue she is able to generate, the value of which she believes will exceed $75,000.  (*Id.* ¶ 20.)  Applying the ECG compensation formula to the parties' disputed revenue totals could either result in an amount that exceeds (for Young) or fails to reach (for Gallagher) $75,000.[3]

## II.  PROCEDURAL BACKGROUND

Young asserts a single cause of action under 28 U.S.C. §2201(a) and Federal Rule of Civil Procedure 57 seeking a declaratory judgment that the Agreement does not prohibit

---

[3] Using Young's $450,000 estimate for just the initial 6 clients would result in $78,750 in incentive pay.  (($450,000/1,000) x 87.50 x 2 (years) = $78,750.)  Performing the same calculation with $682,500 as the base revenue value will necessarily generate a higher total.

Using either of Gallagher's revenue numbers results in compensation below the jurisdictional threshold.   (($273,641.25/1,000) x 87.50 x 2 (years) = $47,887.22); ($406,285.89/1,000) x 87.50 x 2 (years) = $71,100.03.)

the solicitation of customers. (Compl. ¶¶ 24–25.) Young alleges the Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because she is a resident of Minnesota, Gallagher is a Delaware Corporation with its principal place of business in Illinois, and the amount in controversy exceeds $75,000. (*Id.* ¶¶ 8–10.) In response, Gallagher filed the pending motion due to Young's alleged failure to sufficiently plead facts supporting the conclusion that the amount in controversy requirement is met. (Def.'s Mot. to Dismiss, July 15, 2021, Docket No. 11.)

**DISCUSSION**

**I. STANDARD OF REVIEW**

A motion to dismiss pursuant to Rule 12(b)(1) challenges the Court's subject matter jurisdiction and requires the Court to examine whether it has authority to decide the claims. *Damon v. Groteboer*, 937 F. Supp. 2d 1048, 1063 (D. Minn. 2013). Under 28 U.S.C. § 1332(a), "[a] district court has subject matter jurisdiction in a diversity case when a fact finder could legally conclude, from the pleadings and proof adduced to the court before trial, that the damages that the plaintiff suffered are greater than $75,000." *Kopp v. Kopp*, 280 F.3d 883, 885 (8th Cir. 2002). On the other hand, there is no subject matter jurisdiction if an award exceeding $75,000 is "legally impossible." *Hillesheim v. Casey's Retail Co.*, No. 16-61, 2016 WL 3676164, at *2 (D. Minn. July 6, 2016); *see also Kopp*, 280 F.3d at 884–85 (noting that a complaint should be dismissed for lack of subject matter jurisdiction if there is "legal certainty" that a factfinder could not find the amount in

controversy exceeds $75,000).  "If the defendant challenges the plaintiff's allegations of the amount in controversy, then the plaintiff must establish jurisdiction by a preponderance of the evidence." *Kopp*, 280 F.3d at 884. When the legal certainty and preponderance of the evidence standards are combined, the court's relevant inquiry becomes whether "a fact finder could legally conclude, from the pleadings and proof adduced to the court before trial" that the amount in controversy from the plaintiff's perspective is greater than $75,000.[4] *Id.*

## II.  ANALYSIS

### A.    Facial Versus Factual Challenge to Jurisdiction

Initially, Gallagher asks the Court to ignore the declarations Young filed with her response brief.  (*See* Young Decl.; Decl. of Gregg Glaser ("Glaser Decl."), Aug. 11, 2021, Docket No. 20.)  Gallagher asserts that it is facially challenging jurisdiction, and the Court

---

[4] Although it was neither raised nor addressed in either of the parties' briefing, counsel for Young argued during the hearing on Gallagher's motion that the value of this case could and should also be measured from Gallagher's perspective because the Eighth Circuit adopted the "defendant's perspective" approach in *Usery v. Anadarko Petroleum Corp.*, 606 F.3d 1017 (8th Cir. 2010).  Under the defendant's perspective approach, the amount in controversy can sometimes be measured by the costs to a defendant of losing a case when such costs exceed the benefit a plaintiff would gain by winning.  *See McCarthy v. Amoco Pipeline Co.,* 595 F.2D 389, 393–95 (7th Cir. 1979).  Young therefore argues that because the cost to Gallagher of losing this case would represent potentially millions of dollars of lost revenue, their costs should control the Court's analysis regarding the amount in controversy.  If the Court were to apply the test here, the amount in controversy would clearly be met as it is undisputed that the clients at issue represent upwards of a million dollars in revenue for Gallagher over the two-year duration of the alleged non-solicitation provision. However, the Eighth Circuit has "never endorsed this rule" and did not find it necessary to address in that case.  *Anadarko*, 606 F.3d 1017, 1019.  Similarly, it is not necessary for the Court to address this issue in the present case.

therefore cannot consider the declarations. (Def.'s Reply Mem. Supp. Mot. to Dismiss at 3–4, Aug. 19, 2021, Docket No. 22.)

"In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). Accordingly, "the court restricts itself to the face of the pleadings and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Osborn v. United States*, 918 F.2d 724, 729 n.6 (internal citations omitted). Alternatively, in a factual attack, the court "inquires into and resolves factual disputes." *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 801 (8th Cir. 2002). Thus, courts are free to "consider[] matters outside the pleadings" in a factual attack. *Osborn*, 918 F.2d at 729 n.6. When "the parties have submitted declarations and exhibits that go beyond information in the pleadings, [a] challenge is a factual as opposed to a facial challenge to jurisdiction." *Mobile Mini, Inc. v. Vivea*, No. 17-1684, 2017 WL 3172712, at *3 (D. Minn. July 25, 2017).

Here, both parties have submitted declarations that go beyond the pleadings. Therefore, the Court will treat Gallagher's challenge as a factual challenge to jurisdiction.[5]

---

[5] Regardless of the parties' declarations, Young's pleadings are sufficient to satisfy either a facial or factual challenge to jurisdiction regarding the amount in controversy.

B.      **Amount in Controversy**

Next, the Court must decide whether Young has sufficiently alleged that the amount in controversy exceeds $75,000 sufficient to establish that the Court has subject matter jurisdiction over this action.  Young initially pleaded that this Court has diversity jurisdiction over her action and is required to show that the parties are citizens of different states and that the amount in controversy exceeds $75,000.  28 U.S.C. § 1332(a)(1).  Young has alleged that she is a resident of Hennepin County, Minnesota and that Gallagher is a Delaware corporation with a principal place of business in Itasca, Illinois and Gallagher has not alleged any deficit with respect to diversity.

Instead, Gallagher argues that Young has not alleged facts to support that the amount in controversy exceeds $75,000 and, even if Young did, any factual allegations would require speculation as to the amount in controversy making them insufficient to meet the jurisdictional requirement. (Def.'s Mem. Supp. Mot. to Dismiss at 7, July 15, 2021, Docket No. 13.)

Young's prior performance is relevant to determining the value of the pending claim and impermissible speculation is not required to conclude that the jurisdictional value has been met.

1. **Prior performance with the same customers**

Young contends that a fact finder could find that the amount in controversy exceeds $75,000 based on the previous revenue she generated from the same clients while she was still working for Gallagher and cites *Retail Tech, Inc. v. Tolt Solutions, Inc.,*

No. 14-2898, 2014 WL 12613312 (D. Minn. Oct. 10, 2014) to support her proposition. (Pl.'s Mem. Opp. Def.'s Mot. to Dismiss at 14–15, Aug. 11, 2021, Docket No. 16.)

In *Retail Tech*, an employee left the defendant to work for a competitor and the employee sought a declaratory judgment in state court that the new position did not violate the employee's non-solicitation and non-competition agreements with the former employer. *Retail Tech*, 2014 WL 12613312, at *1. The former employer removed the case to federal court and the plaintiff sought to have the case remanded because the amount-in-controversy allegedly did not exceed $75,000. *Id*. The court denied the motion to remand because it was fair to infer, based on the former employee's previous compensation, that the value of a declaratory judgment exceeded $75,000. *Id.* at *2.

Gallagher attempts to distinguish this case by pointing out that, unlike the case currently before the Court, *Retail Tech* also involved a non-competition agreement. (Def.'s Reply Mem. Support Mot. to Dismiss at 10.) Gallagher argues that considering an employee's previous compensation is appropriate in the context of prohibiting competition but not in the context of a non-solicitation agreement because the plaintiff is prohibited from earning a salary under a non-competition agreement but is not similarly prohibited under a non-solicitation provision. (*Id*.)

The Court is not persuaded. Gallagher does not offer a reason why the past performance with the exact same customers cannot guide the Court's analysis when determining the value of a declaratory judgment allowing Young to solicit said customers.

- 9 -

Under both a non-competition provision and a non-solicitation provision, an employee is prohibited from activity that would otherwise earn compensation and Gallagher's distinction fails to recognize this.

Past performance with the same customers can accurately measure the value of Young's claim and that the value of a declaratory judgment from Young's perspective in the current case is most accurately measured by analyzing the compensation that Young would earn if the non-solicitation provision did not prohibit her from soliciting previous clients.

### 2.   Valuing Young's Claim Does Not Require Speculation

Gallagher alternatively claims that the Court should dismiss Young's claim because determining the amount in controversy would require impermissible speculation. (Def.'s Reply Mem. Supp. Mot. to Dismiss at 8.)

Gallagher directs the Court to two cases from the Northern District of Georgia that it claims are analogous: *Martin v. Hauser, Inc.*, No. 20-4223, 2020 WL 6305555 (N.D. Ga. Oct. 28, 2020), and *Saville v. Lonesource, Inc.*, No. 11-4398, 2012 WL 13015092 (N.D. Ga. Feb. 9, 2012).

In *Martin,* the defendant-employer removed the case to federal court on the basis of diversity jurisdiction and the plaintiff-employee moved to remand the case. The court specifically found that the defendant employer "lack[ed] any credible information about what Plaintiff [would earn]" and was instead relying on a months-old draft email they had found in the plaintiff's work inbox. *Martin,* 2020 WL 6305555, at *3.  Further, the former

employer stated that the employee would lose $75,000 in commission under the restrictive covenants but had no evidence, nor had either party ever alleged, that the plaintiff was actively or had ever attempted to solicit clients. *Id*. at *4–5 ("Without any evidence about how Plaintiff's new commission arrangement works, what clients are likely to leave Defendant to work with Plaintiff at CAC, or how much they will likely spend at CAC, Defendant's contention that Plaintiff will earn more than $75,000 in commissions is nothing more than rank speculation.").

*Saville* follows a nearly identical path. In that case, the defendant-employer sought to remove the case to federal court but did not provide any factual support for the conclusion that the amount-in-controversy exceeded $75,000.   *Saville,* 2012 WL 13015092, at *1–2.  Instead, the former employer tried to rely on the plaintiff's general ability to solicit clients in order to meet the jurisdictional threshold. *Id.* at *2–3.

Two district court cases in the Eighth Circuit illustrate the principles Gallagher uses *Martin* and *Saville* to support.  The court in *Hill v. Ford Motor Co.* granted a motion to remand based on a lack of jurisdiction because the defendant asked the "[c]ourt presume that this case involves potential damages exceeding $75,000.00 without offering one shred of evidence regarding potential damages." *Hill v. Ford Motor Co.,* 324 F. Supp. 2d 1028, 1036 (E.D. Mo. 2004). Similarly, in *Albert v. Geico,* the court, relying on *Hill*, granted a motion to dismiss for lack of subject matter jurisdiction when the plaintiff presented no evidence and asked the court to simply assume that they would be entitled to the

maximum amount of an insurance policy exceeding $75,000. *Albert v. GEICO*, No. 17-1697, 2017 WL 6033514, at *4 (D. Minn. Oct. 10, 2017), *R&R adopted*, 2017 WL 6028506 (D. Minn. Dec. 5, 2017) ("Speculation and belief that plaintiff's damages exceed $75,000 are insufficient to meet the . . . burden of proof under both the preponderance of evidence standard and the legal certainty standard for diversity jurisdiction." (quoting *Hill,* 324 F. Supp. 2d at 1036)).

The case currently before the Court is distinct from both the Georgia cases and district court cases in the Eighth Circuit.  According to Young, the fifteen customers that have contacted her represent $682,500 in previous annual revenue. (Young Decl. ¶ 23.) These customers alone would generate nearly $120,000 in incentive pay over the two-year duration of the non-solicitation provision. (*Id.*) Young claims that the value of a declaratory judgment in her favor further exceeds these summary estimates because she would be allowed to solicit all of her former customers, not just the fifteen currently listed, and that she may also lose out on equity in her new employer, valued at roughly $105,000, without being able to solicit her former customers. (Pl's Mem. Opp. Mot. to Dismiss. at 8, 15; Glaser Decl. ¶ 5.)

This case does not require the type of improper speculation at issue in *Martin*, *Saville*, *Albert*, and *Hill*. Young has pointed to specific customers, reasonable estimates of their past revenues, and the exact compensation formula used to determine her incentive pay. While Gallagher correctly points out that certain customers have already started

transitioning to Young's new employer, this does not negate the fact that she may still receive credit under her compensation formula in the future if she were allowed to solicit addition business from them. Additionally, Gallagher's own estimate of Young's compensation—$71,100.03—comes conspicuously close to the jurisdictional amount while engaging in some mathematical gymnastics to create the gap.[6] (Hamilton Decl. ¶ 8.)

To summarize, the present case involves fifteen specifically identified clients who have reached out to Young about working with her at her new employer. Young possesses credible information about both their previous revenue and her compensation structure and the parties are nearly identical in their estimations of the annual revenues involved.[7] These facts alone are different from *Martin* and *Saville* in that the plaintiff-employee, and not the defendant-employer, has brought specific information as to customers and the

---

[6] Notably, Gallagher's estimate comes within $4,000 of the jurisdictional amount and does so while excluding customers that represent nearly $210,000 of revenue. Gallagher excludes this revenue because Young has alleged that the two customers—Community Physician Network and Akron Childrens—have already begun transition to her new employer. As previously noted, the Court is not persuaded that beginning to transition removes any possibility of Young receiving credit for soliciting future business such that the clients should be wholly ignored for purpose of establishing the amount in controversy.

[7] Young estimated that the annual revenues for the fifteen customers totaled $682,500 while Gallagher asserts that the revenue for the customers, minus Community Physician Network and Akron Childrens, was $406,285.89. Although Gallagher did not give the Court a complete estimate including all the customers, Gallagher's total estimate becomes $616,285.89 when combined with Young's estimation for the two absent customers. The difference of roughly $70,000, while not negligible, does not raise any suspicions that either party is in bad-faith misrepresenting revenues.

employee's compensation. The facts are also distinguishable from *Albert* and *Hill* where, again, the courts were asked to presume that the jurisdictional threshold had been met in the absence of evidence. Even though the parties disagree as to the potential value of a declaratory judgement, one of Gallagher's own estimates comes within $4,000 while not accounting for two of the customers. Based on these facts, the Court finds that the amount in controversy has been established sufficient for diversity jurisdiction.

## CONCLUSION

The Court finds that Young has sufficiently alleged that the value of a declaratory judgment in her favor allowing her to solicit her previous clients exceeds the $75,000 jurisdictional amount. The Court will therefore deny Gallagher's Motion to Dismiss.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss [Docket No. 11] is **DENIED.**

DATED: January 4, 2022
at Minneapolis, Minnesota

JOHN R. TUNHEIM
Chief Judge
United States District Court